No. 15-4019

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Appellee*,

v.

ROBERT F. MCDONNELL,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Eastern District of Virginia, Richmond Division, James R. Spencer, District Judge

**DEFENDANT-APPELLANT'S REPLY ON MOTION
TO CLARIFY ORDER GRANTING RELEASE PENDING APPEAL OR,
IN THE ALTERNATIVE, TO STAY THE MANDATE
PENDING RESOLUTION OF A PETITION FOR CERTIORARI**

| | |
|---|---|
| John L. Brownlee | Noel J. Francisco |
| Daniel I. Small | *Counsel of Record* |
| Christopher M. Iaquinto | Henry W. Asbill |
| Elizabeth N. Jochum | James M. Burnham |
| HOLLAND & KNIGHT LLP | JONES DAY |
| 800 17th Street N.W. | 51 Louisiana Avenue N.W. |
| Suite 1100 | Washington, DC 20001 |
| Washington, DC 20006 | Telephone: (202) 879-3939 |
| Telephone: (202) 828-1854 | Facsimile: (202) 626-1700 |
| Facsimile: (202) 955-5564 | njfrancisco@jonesday.com |

*Counsel for Defendant-Appellant
Robert F. McDonnell*

**INTRODUCTION**

This Court has already found that Gov. McDonnell is not appealing merely to delay; that he is neither a flight risk nor a public danger; and that, at least as of January, his case presented one or more substantial questions of federal law. Notwithstanding this Court's rejection of his position on the merits, the issues remain substantial. The Government is obviously correct that, as Gov. McDonnell's motion made clear, he now must show that his appeal presents substantial questions in the context of Supreme Court review. But it does, for the reasons his motion gave.

Gov. McDonnell's appeal presents two important questions of federal law, on both of which the panel opinion is in tension (if not conflict) with decisions of the Supreme Court and in conflict with decisions in its sister Circuits. The Supreme Court is reasonably likely to take an interest in these questions, since one (what constitutes "official action") has serious implications for elected officials throughout the Circuit that surrounds the Nation's capital, while the other (voir dire on pretrial publicity) is in tension with a recent Supreme Court opinion endorsing a far more comprehensive voir dire process, which three Justices believed was *still* insufficient. *Skilling v. United States*, 561 U.S. 358, 437 (2010) (Sotomayor, Stevens, Breyer, JJ., dissenting in part) ("The District Court's inquiry lacked the necessary thoroughness and left serious doubts about whether the jury empanelled to decide [the] case was capable of rendering an impartial decision based solely on the evidence presented in the courtroom."). Most of the "9,000 petitions per Term," Opp. 2, do not involve

circuit splits on important questions of federal law in which the Supreme Court has recently taken an active interest. The odds of Gov. McDonnell securing certiorari are plainly much higher than the "one percent" the Government suggests. *Id.*

For those reasons, this Court should either clarify that its original grant of bond remains in effect for the pendency of Gov. McDonnell's entire appeal—that is, until the Supreme Court denies review or affirms this Court's decision—or stay, for the same period, the mandate that will vacate its prior grant of bond (or simply grant bond anew pending certiorari review). The Government does not dispute—nor could it—that postponing Gov. McDonnell's sentence by the six months it would likely take for the Supreme Court to consider his petition imposes no harm on anyone, while imprisoning Gov. McDonnell now would impose the irreparable harm of his serving all or most of his two-year sentence should that Court ultimately overturn his convictions. The equities could not weigh more heavily in favor of the course this Court adopted once before—granting temporary, interim relief to maintain the status quo until the judicial process runs its course.[1]

## **ARGUMENT**

The Government objects to postponing Gov. McDonnell's two-year sentence

---

[1] Should this Court decline to stay its mandate pending certiorari, Gov. McDonnell respectfully requests that it delay issuing its mandate for the full seven days typically provided by Federal Rule of Appellate Procedure 41(b) from the date it denies the motion at issue in order to allow the Supreme Court to determine whether or not to accord Gov. McDonnell the interim relief he seeks here.

until appellate review is complete. None of its arguments is persuasive.

1. The Government expresses confusion about what "official act" question Gov. McDonnell will ask the Supreme Court to review. To be clear: Gov. McDonnell will ask the Court to review the panel's holding that Gov. McDonnell's actions—which it described as "asking a staffer to attend a briefing, questioning a university researcher at a product launch, and directing a policy advisor to 'see' him about an issue"—were "official acts" that formed a proper basis for conviction. Op. 83. The panel's determination that these access-facilitating or information-gathering acts were "official" ones is in tension with the Supreme Court's decision in *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999), and in conflict with the legal rules articulated in decisions by three other Circuits, including the neighboring D.C. Circuit. Should the Supreme Court agree with Gov. McDonnell, that will require, at the least, jury instructions communicating the operative legal line, as well as reconsidering this Court's conclusion that these acts were "official" and thus illegal. Gov. McDonnell fully understands that this Court disagreed with his position. But that does not alter the fact that the "official act" question remains a substantial one.

2. The Government notes that this Court distinguished *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), by reading it to mean "that job functions of a strictly ceremonial or educational nature will rarely, if ever, fall within this definition." Opp. 12 (quoting Op. 60) (emphasis omitted). But whether that is the correct reading of Sun-Diamond is itself a substantial question. After all, the word

"rarely" does not appear in the Supreme Court's opinion. To the contrary, the Supreme Court used categorical language: "[T]hose actions—while they are assuredly 'official acts' in some sense—are not 'official acts' within the meaning of the statute." *Sun-Diamond*, 526 U.S. at 407. The Court used that categorical language even though one of the "actions" it said is "not" an official act was a "speech" by the "Secretary of Agriculture" to "farmers concerning various matters of USDA policy," *id.*—an undisputedly governmental matter that, to use the panel opinion's terminology, is well within the Secretary's "sphere of influence." Op. 79. In fact, the Court expressly recognized that "the Secretary of Agriculture always has before him or in prospect matters that affect farmers," but said that this ever-present connection to pending governmental issues made no difference. *Sun-Diamond*, 526 U.S. at 407.

The Supreme Court's opinion in *Sun-Diamond* was unanimous, is less than ten years old, and marks that Court's last foray into defining the bounds of "official action." It is reasonably likely that some members of that Court will view this case as an appropriate vehicle to build on *Sun-Diamond* and bring greater clarity to a legal line of unquestionable importance. That is particularly true given the tensions between its more-recent campaign finance decisions and this Court's reading of federal corruption laws that apply to campaign donations no less so than to private gifts. *Sun-Diamond* thus further underscores that the questions here are substantial ones.

**3.** The Government explains why it believes this case was *a fortiori* from this Court's decision in *United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012). But *Jefferson* is

no longer dispositive, since the question is whether this case presents a "substantial question" for purposes of *Supreme Court* review. Although *Jefferson* binds panels of *this* Court, it is not binding on the Supreme Court. And the fact that the Supreme Court denied Rep. Jefferson's certiorari petition is meaningless, since the question presented by that petition was very different from the question here—and, anyway, "denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene v. Bush*, 549 U.S. 1328, 1329 (2007) (Stevens, J., respecting denial of certiorari).

4. The Government never engages with the legal rules articulated in other Circuits' opinions, instead attempting to distinguish them on factual grounds that make no difference. It never explains, for example, how Gov. McDonnell asking an aide to "see him" or asking researchers questions are legally different from the "purely informational inquiry" the D.C. Circuit has distinguished from seeking "to influence" an actual government decision (there, by *actually asking* the other official *to actually do* something). *United States v. Ring*, 706 F.3d 460, 470 (D.C. Cir. 2013). It similarly discusses the defendant's actions in *Valdes v. United States*, without wrestling with the court's *holding* that "official action" requires exertion of "inappropriate influence on decisions that the government actually makes." 475 F.3d 1319, 1325 (D.C. Cir. 2007) (en banc). Same for *United States v. Urciuoli*, where the Government ignores the opinion's clear distinction between acts that use (or threaten to use) "official power[s]," versus "trad[ing]" on the "reputation," "network," or prestige that "comes with political office." *United States v. Urciuoli*, 513 F.3d 290, 295-97 (1st Cir. 2008).

- 5 -

As for *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978), the Government offers no distinction at all. It concedes that the Eighth Circuit vacated a conviction where the official "promised *only* to introduce the [paying] firm to influential persons," but "did not promise to use his official position to influence those persons." Opp. 9 n.2 (quoting *United States v. Loftus*, 992 F.2d 793, 796 (8th Cir. 1993). It claims that "action" was not "'on' the question or matter," Opp. 9, but that is clearly incorrect since the introductions in *Rabbitt* were pursuant to an agreement where the official would, "for a fee of ten percent from any resulting work, [] introduce the firm to people who *might be able to secure [state] architectural contracts for it*." *Rabbitt*, 583 F.2d at 1020 (emphasis added). The conflict between that decision and this Court's is clear.

5.  The Government argues that the jury instructions do not present a circuit conflict because no other Circuit has rejected the jury instructions the district court gave here. Opp. 11. That is not true. To be sure, no other Circuit Court has reviewed instructions on "official action" that said nothing about "governmental power," "governmental decisions," or "governmental policy" beyond alluding to these requirements through quoting a complex definition from a different bribery statute. But three Circuits have adopted legal reasoning that would require reversal on the instructions here. On the instructions, too, the conflict is thus clear.

6.  Finally, the Government tries to paint pretrial publicity as fact-bound, when it is actually legally straightforward. Two aspects of this Court's holding present a clear conflict with the law in other Circuits and pose tension with the Supreme

Court's own decisions, making further review at least reasonably possible.

First, while this Court criticizes the phrasing of the defense's and the Government's joint, initial attempt to ask jurors whether their admitted exposure to adverse pretrial publicity caused them to form opinions about guilt, it does not deny that the defense requested this question on multiple occasions. The panel instead endorses the court's refusal to ask it. Op. 35 ("We are satisfied that the trial court's questioning in this case was adequate…."). Right or wrong, that legal holding is amenable to Supreme Court review. And its tension with decisions like *Mu'min v. Virginia*, 500 U.S. 415, 420 (1991) ("Whenever a potential juror indicated that he had read or heard something about the case, the juror was then asked whether he had formed an opinion…."), makes review at least reasonably likely.

Second, while the district court's questionnaire asked several quantitative questions about related topics (like media consumption), the panel opinion correctly notes that it asked the venire—collectively, from a distance—whether they could be fair just once, engaging in no further questions about their general or specific exposure to pretrial publicity. Op. 33-34. The panel opinion endorses that limited questioning: "We did not hold [in a prior case], and have not held since, that individual questioning, out of earshot of the rest of the venire, is required to alleviate generalized concerns about the pernicious effects of pretrial publicity." Op. 34-35. That, too, is a clear statement of law. It likewise lends itself to Supreme Court review.

And it, too, presents a straightforward conflict with decisions in seven other

Circuits. Those Circuits hold that "merely asking potential jurors to raise their hands if they could not be impartial was not adequate voir dire in light of significant pretrial publicity…." *United States v. Pratt*, 728 F.3d 463, 470 (5th Cir. 2013). *But see* Op. 35 ("[W]e have held that merely asking for a show of hands was not an abuse of discretion."). Like the Fifth Circuit, the First,[2] Second,[3] Third,[4] Seventh,[5] Ninth,[6] and Eleventh Circuits are in conflict with this Court's decision. As the Eleventh Circuit

---

[2] *E.g.*, *Patriarca v. United States*, 402 F.2d 314, 317-18 (1st Cir. 1968) ("In cases where there is … a significant possibility that jurors have been exposed to potentially prejudicial material, and on request of counsel, we think that the court should proceed to examine each prospective juror apart from other jurors and prospective jurors, with a view to eliciting the kind and degree of his exposure to the case or the parties, the effect of such exposure on his present state of mind, and the extent to which such state of mind is immutable or subject to change from evidence.").

[3] *E.g., United States ex rel. Bloeth v. Denno*, 313 F.2d 364, 372 (2d Cir. 1963) (en banc) ("[M]erely going through the form of obtaining jurors' assurances of impartiality is insufficient.").

[4] *E.g.*, *Waldorf v. Shuta*, 3 F.3d 705, 712 (3d Cir. 1993) ("We agree with [the Second Circuit's decision in *Bloeth*] that in the absence of an examination designed to elicit answers which provide an objective basis for the court's evaluation, 'merely going through the form of obtaining juror's assurances of impartiality is insufficient to test that impartiality.'").

[5] *E.g.*, *United States v. Dellinger*, 472 F.2d 340, 375 (7th Cir. 1972) ("Natural human pride would suggest a negative answer to whether there was a reason the juror could not be fair and impartial. A juror might well answer negatively in good faith, without stopping to consider the significance or firmness of impressions he might have gained from news reports. We think the question is not adequate to bring out responses showing that jurors had gained information and formed opinions about relevant matters in issue if in truth any had.").

[6] *E.g., Silverthorne v. United States*, 400 F.2d 627, 639-40 (9th Cir. 1968) ("Because of the voluminous publicity antedating appellant's trial, some of which was prejudicial in nature, and in view of the trial court's denial that any prejudice existed because of the pretrial publicity, the court's voir dire examination should have been directed to the individual jurors.").

put it, "relief is required where there is a significant possibility of prejudice plus inadequate voir dire to unearth such potential prejudice in the jury pool." *Jordan v. Lippman*, 763 F.2d 1265, 1275 (11th Cir. 1985). In light of these decisions, there is a reasonable probability that the Supreme Court will review this question, which is undeniably important since it will govern voir dire in every future trial for publicly condemned defendants, rich and poor alike. And if the Court decides this question in Gov. McDonnell's favor, it would require overturning his convictions.

* * *

The Government taunts Gov. McDonnell for having "unsuccessfully litigated the same official act arguments in approximately 19 separate briefs or similar pleadings filed in the district court or this Court," advancing arguments that "have changed little since the first pleading he filed…." Opp. at 11 n.4. But none of those briefs went to the Supreme Court, the one tribunal that has not yet had the chance to decide whether Gov. McDonnell and his counsel are correct that a government official must do something more than ask a question, arrange a meeting, or invite someone to a cocktail party, even if he does it in exchange for gifts or campaign contributions, to commit a federal felony. This Court has already once found that argument to be substantial, allowing Gov. McDonnell to remain free while it decided whether he actually broke the law, even though it ultimately rejected his legal position.

As this Court makes that decision again, all the factors point toward reaching the same conclusion: The balance of the equities, the brevity of a Supreme Court

certiorari process that will be quicker than this Court's appellate process, and the obvious truth that Gov. McDonnell is not presenting an argument to the Supreme Court that he has made in "19 separate briefs"—beginning "mere hours after the grand jury indicted him," *id.*—simply as a delay tactic to forestall an inevitable jail sentence. He is advancing legitimate legal arguments that have a reasonable chance of getting the Supreme Court's attention. This Court should thus acknowledge, as it did before, that jurists can reasonably disagree about difficult legal questions—as did the many well-regarded government officials, government lawyers, law professors, and former federal judge who have participated as *amici* here—and recognize that the Supreme Court might disagree with this Court's conclusions—which is all that Gov. McDonnell needs to show in order to remain free pending that Court's review. In short, Gov. McDonnell should not be imprisoned "before he has a fair opportunity to seek Supreme Court review." *Mickens v. Taylor*, 243 F.3d 870, 871 (4th Cir. 2001) (Michael, J., joined by Motz & King, JJ., dissenting from denial of stay).

## CONCLUSION

Gov. McDonnell respectfully requests that the Court clarify that its order granting release pending appeal remains in effect pending the filing and disposition of a timely certiorari petition; or, in the alternative, stay its mandate, pursuant to Fed. R. App. P. 41(d), pending the filing and disposition of a timely petition for certiorari. As a minimum, he requests that this Court stay its mandate for seven days to give the Supreme Court an opportunity grant the interim relief that he seeks here.

| | |
|---|---|
| August 17, 2015 | Respectfully submitted, |
| John L. Brownlee<br>Daniel I. Small<br>Christopher M. Iaquinto<br>Elizabeth N. Jochum<br>HOLLAND & KNIGHT LLP<br>800 17th Street N.W.<br>Suite 1100<br>Washington, DC 20006<br>Telephone: (202) 828-1854<br>Facsimile: (202) 955-5564 | /s/ Noel J. Francisco<br>Henry W. Asbill<br>Noel J. Francisco<br>James M. Burnham<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Telephone: (202) 879-3939<br>Facsimile: (202) 626-1700 |

# CERTIFICATE OF SERVICE

I certify that on August 17, 2015, the foregoing motion was served on counsel of record for all parties through the CM/ECF system

Dated: August 17, 2015

/s/ Noel J. Francisco
Noel J. Francisco

*Counsel for Defendant-Appellant
Robert F. McDonnell*